ORIGINAL
D&F
C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ABDUL RAHIM HOWARD,

                Petitioner,

-against-

UNITED STATES OF AMERICA,

                Respondent.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 10-CV-2775 (FB)

*Appearances:*
*For the Petitioner:*
MITCHELL ALAN GOLUB
Golub & Golub LLP
225 Broadway, Suite 1515
New York, NY 10007

*For the Respondent:*
LORETTA E. LYNCH
United States Attorney
Eastern District of New York
BY:   JONATHAN E. GREEN
         Assistant United States Attorney
271 Cadman Plaza East
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

      Petitioner Abdul Rahim Howard ("Howard") seeks to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 ("§ 2255"). For the reasons set forth below, Howard's petition is denied in its entirety.

I

      A jury convicted Howard of conspiracy to possess and distribute at least fifty grams of cocaine base, use of drug related premises to distribute and store cocaine base, and distribution and possession of cocaine base within 1,000 feet of a playground, in violation of 21 U.S.C. §§ 846, 856 and 860. He was sentenced to the statutory mandatory minimum of 240 months of imprisonment and ten years of supervised release; his

conviction was affirmed on appeal. *See United States v. Ramos*, 314 F. App'x 344, 2008 WL 4950007 (2d Cir. 2008), *cert. denied*, 130 S. Ct. 225 (2009), *reh'g denied*, 130 S. Ct. 1045 (2009).

Howard now claims that his trial counsel, Mark S. DeMarco ("DeMarco"), was constitutionally ineffective: (A) *prior* to trial for failing to adequately explain the consequences of accepting or rejecting the government's cooperation agreement; (B) *during* trial for failing to object to (1) the admission of tape-recordings and co-conspirator statements in violation of the Confrontation Clause and (2) a deficient reasonable doubt jury instruction, and for (3) "sleep[ing] during critical stages of [his] trial"; and (C) *at sentencing* by failing to oppose an aggravating role enhancement and by failing to argue various mitigating factors. In addition, Howard claims that his sentence was unconstitutional because it was based on the "Guideline application for crack cocaine offenders which is constitutionally vague and meaningless." The facts are integrated in the discussion below where necessary.

II

To prevail on his ineffective assistance claims, Howard must satisfy the familiar *Strickland* test by showing "(1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that as a result he suffered prejudice." *United States v. Jones*, 482 F.3d 60, 76 (2d Cir. 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Counsel's performance is measured against "[r]easonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). "A reviewing court must indulge a strong presumption that counsel's [performance] falls within the wide range of reasonably professional assistance." *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004).

2

Prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different." *Wiggins*, 539 U.S. at 534. A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.* Either *Stickland* requirement may be used to dispose of a claim; indeed "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Strickland*, 466 U.S. at 670.

## A. Ineffective Assistance: Pretrial

Howard argues that DeMarco was ineffective by inadequately explaining the consequences of accepting or rejecting the government's proposed cooperation agreement. The government offered Howard a 5K1.1 substantial assistance letter in exchange for his agreement to cooperate and plead guilty to a gun charge and a drug charge carrying a combined fifteen-year mandatory minimum sentence. An attorney's failure to adequately advise a client about the consequences of accepting or rejecting a plea offer may constitute constitutionally deficient performance. *See, e.g., Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) ("Defense counsel have a constitutional duty to give their clients professional advice on the crucial decision of whether to accept a plea offer from the government.").

Howard's and the government's submissions were insufficient to determine whether DeMarco's performance was objectively reasonable; thus, the Court held a hearing on that issue on March 31, 2011.

Based on the testimony at that hearing and on the supplemental materials submitted to the Court prior to the hearing, it is clear that Howard did not understand two consequences of accepting or rejecting the government's cooperation agreement: first, that

3

a 5K1.1 letter from the government could allow a sentencing judge to impose a sentence substantially below the fifteen-year mandatory minimum carried by the charges in the cooperation agreement; and second, that because Howard had a prior felony drug conviction, the government could file a 21 U.S.C. § 851 prior felony information, doubling the mandatory minimum on his drug charge from ten to twenty years.

That Howard was confused, however, does not necessarily mean that DeMarco provided less than objectively reasonable assistance. Howard testified that DeMarco explained to him that a 5K1.1 letter would allow—but not require—the sentencing judge to take "[m]aybe like a year or two" off the fifteen-year mandatory minimum sentence carried by the charges in the cooperation agreement. Hr'g Tr. at 15. Howard also testified that his prior experience pleading in state court—where the prosecution and defense agree on a sentence to be imposed by the judge—led him to believe that by pleading to the charges in the cooperation agreement, he would receive a fifteen-year sentence. DeMarco testified that he explained to Howard that "[Howard] would benefit significantly from cooperation and a 5K1.1 letter," Hr'g Tr. at 74, that he never told Howard that the benefit would be only one or two years off the fifteen-year mandatory minimum, and that he advised Howard to cooperate.

The Court finds DeMarco's testimony more credible for three reasons. First, it is unlikely that an experienced criminal defense attorney like DeMarco would tell a client that the government's 5K1.1 letter would have such a limited impact on the sentence. Second, despite writing DeMarco numerous times about his case (nine such letters are in evidence), Howard admitted on cross-examination to never having written a letter to

4

DeMarco after learning in prison of the substantial impact a 5K1.1 letter can have on a sentence. And third, Howard's testimony that he expected his experience in federal court to be like his prior experience in state court is in conflict with his testimony that he thought the sentencing judge could rely on the 5K1.1 letter and sentence him to less than the fifteen-year mandatory minimum. Upon DeMarco's more credible version of events, he provided objectively reasonable assistance with regard to the 5K1.1 letter's potential impact on Howard's sentence.

DeMarco further testified that during a visit with Howard in jail on February 4, 2005 to discuss an upcoming proffer session, he explained that the government could file a § 851 prior felony information, doubling the mandatory minimum on the drug charge to twenty years. DeMarco's testimony was buttressed by his contemporaneous note — "851 man min" — on the sheet of paper he used to track his meetings with Howard. Gov't Ex. 2. Howard testified that the first time he became aware of the possibility of a § 851 prior felony information and the associated twenty-year mandatory minimum was at a September 9, 2005 status conference. Howard further testified that he wrote DeMarco "a letter after the hearing, telling him that I was confused, because he was telling me different things in there when I get in front of the judge and I'm hearing something different, and it's in one of my letters."[1] Hr'g Tr. at 25.

---

[1] Howard's counsel at the hearing identified this letter as Petitioner's Exhibit A, attached to Howard's supplemental affidavit filed before the hearing. Petitioner's Exhibit A, however, is a letter dated March 6, 2005 — six months before the status conference.

The court finds DeMarco's testimony more credible for two reasons. First, though his notes of his meetings with Howard could have been more thorough, they support the fact that he told Howard in February 2005 that the government could file a § 851 prior felony information. Second, nowhere in a letter dated September 12, 2005 — three days after the status conference — does Howard say that he was confused by what the judge said during the status conference; this absence conflicts with Howard's testimony at the hearing. Upon DeMarco's more credible version of events, he provided objectively reasonable assistance by explaining early on that the government could file a § 851 prior felony information.

Because the Court finds that DeMarco provided Howard with objectively reasonable assistance regarding the consequences of accepting or rejecting the proposed cooperation agreement, Howard has failed to satisfy *Strickland*'s first requirement.

## B. Ineffective Assistance: Trial

### 1. *Co-conspirator Statements*

Howard argues that DeMarco was constitutionally ineffective for failing to object on Confrontation Clause grounds to the admission of tape recorded conversations containing statements by non-testifying co-conspirators. The Confrontation Clause protects the right to cross-examine witnesses' "testimonial" statements. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004). The Second Circuit has held that "a declarant's statements to a confidential informant, whose true status is unknown to the declarant, do[es] not constitute testimony within the meaning of *Crawford*." *United States v. Saget*, 377 F.3d 223, 229 (2d Cir. 2004). Here, the person who recorded the conversations, "Butch,"

6

was a DEA informant; therefore, statements made to Butch on the recordings did not implicate the Confrontation Clause because they were not testimonial in nature.

Howard also argues that DeMarco was constitutionally ineffective for failing to object on Confrontation Clause grounds to a cooperating witness's testimony containing statements by non-testifying co-conspirators. *Crawford* explained, however, that "statements in furtherance of a conspiracy" are "by their nature [] not testimonial," 541 U.S. at 56, and favorably cited *Bourjaily v. United States*, 483 U.S. 171 (1987), as representative of a class of cases where cross-examination is not constitutionally required, provided the test codified in Federal Rule of Evidence 801(d)(2)(E) is satisfied. *Crawford*, 541 U.S. at 58. Rule 801(d)(2)(E) provides that a "statement is not hearsay if . . . [it] is offered against a party and is . . . a statement by a co-conspirator of a party during the course and in furtherance of a conspiracy." The *Bourjaily* Court stated that it is for the judge to determine whether that test is satisfied by a preponderance of the evidence. 483 U.S. at 175.

Evidence was admitted at trial showing by a preponderance of the evidence that Howard and two of the three declarants[2] whose statements the cooperating witness repeated were part of the same conspiracy, and that the statements were made during the course, and in furtherance, of the conspiracy. Thus, the cooperating witness's testimony

---

[2] The cooperating witness repeated statements by a third declarant, Butch, who was not part of the conspiracy, but whose statements were properly admitted to provide context to the statements of the co-conspirators, and because they were not testimonial. *See United States v. Burden*, 600 F.3d 204, 225 (2d Cir. 2010) (concluding that informant's statements on [a] body wire recording [were] not within the core class of testimonial statements described in *Crawford*, even when one accounts for [the informant's] knowledge that his statements could be used at a later trial") (internal quotation omitted).

7

about statements made by Howard's co-conspirators did not implicate the Confrontation Clause because they were admissible pursuant to Rule 801(d)(2)(E), and therefore non-testimonial.

Because the co-conspirators' statements in the recorded conversations, and the co-conspirators' statements as repeated by the cooperating witness, did not implicate the Confrontation Clause, DeMarco reasonably did not object to their admission into evidence and Howard has failed to satisfy *Strickland*'s first requirement. Moreover, because the statements would have been admitted over an objection by DeMarco, Howard has failed to satisfy *Strickland*'s prejudice requirement.

## 2. *Deficient Reasonable Doubt Jury Instruction*

Howard argues that DeMarco's failure to object to the Court's inadvertantly incorrect reasonable doubt instruction[3] constitutes ineffective assistance of counsel. If reasonable doubt jury instructions are "constitutionally deficient," the conviction must be reversed. *See Sullivan v. Louisiana*, 508 U.S. 275, 280-83 (1993). Further, an attorney's failure to object to constitutionally deficient reasonable doubt jury instructions is not objectively reasonable performance, and prejudice is presumed. *See Bloomer v. United States*, 162 F.3d 187, 194 (2d Cir. 1998). Here, however, Howard challenged the Court's reasonable doubt jury instruction on direct appeal, and the circuit court held that "[a]lthough [the]

---

[3]   During the jury charge, the Court said: "If you view the evidence with respect to the count you are considering as reasonably permitting either of two conclusions, one of innocence, the other of guilt, you must, of course, adopt the conclusion of guilt." Trial Tr. at 304-05.

instruction was indisputably incorrect (although apparently inadvertent), . . . there is no reasonable likelihood that the jury understood the required standard of proof to be anything less than beyond a reasonable doubt." *United States v. Ramos*, 314 F. App'x 344, 346 (2d Cir. 2008). Because constitutionally deficient jury instructions require reversal, the circuit court's holding is tantamount to a finding that the Court's reasonable doubt jury instructions were not constitutionally deficient; moreover, because the circuit court found there was "no reasonable likelihood" that the jury misunderstood the direction, had DeMarco objected, there is no reasonable likelihood the outcome would have been different. Thus, even if DeMarco's failure to object was not objectively reasonable, Howard has not satisfied *Strickland*'s prejudice requirement.

### 3. *Sleeping During Trial*

Howard argues that DeMarco slept through "substantial portions" of the trial—the testimony of the government's cooperating witness, the prosecution's closing statement, and the jury charge—and therefore prejudice should be presumed. In an affidavit submitted with his petition, Howard stated that "at least two of the time [sic] that Mr. DeMarco fell asleep was during testimony of the government's cooperating witness Stanley Johnson, as well as other times including when the court charged the jury." Howard Aff. at 1. In addition, Howard stated that when DeMarco fell asleep, "[I] looked at the judge and the jury to see if they heard him snore or noticed his sleeping," "looked at the Marshall [sic] who was seated at the defense table" who "hunched his shoulders as if to say I don't know," and then "gave the psst sound to wake" DeMarco, who again fell asleep, and "I then said psst again to wake" DeMarco. Howard stated that when he asked

9

DeMarco about falling asleep, DeMarco responded "'I am tired, I have been staying up late the last couple of days,'" then smiled and said "'I'll fight to say [sic] awake.'"

A defendant "suffer[s] prejudice, by presumption or otherwise, if his counsel was repeatedly unconscious at trial for periods of time in which defendant's interests were at stake." *Tippins v. Walker*, 77 F.3d 682, 687 (2d Cir. 1996). In *Tippins*, the circuit court affirmed the district court's grant of the Writ, concluding that there were "repeated and prolonged lapses," where the record was "uncontroverted" that the defendant's attorney "slept every day of the trial," including during the testimony of a "critical" prosecution witness" and "damaging" testimony by a co-defendant"; the "trial lasted twelve days"; and "at least" once, the judge "halted the trial, took all the lawyers into the hallway and issued a warning to [the defendant's attorney.]" *Id.*

Here, however, the record belies Howard's claim that DeMarco's conduct — if he slept at all — came close to the attorney's in *Tippins*. First, during the government's direct examination of its cooperating witness — the first witness in the trial — DeMarco voiced four objections in the morning, and verbally responded to an inquiry by the Court; in the afternoon, DeMarco voiced one objection and verbally responded to an inquiry by the Court. *See* Trial Tr. at 47, 57, 66-67, 68, 76, 111, 113. Second, DeMarco's vigorous cross-examination of the cooperating witness spans over forty pages of the transcript, and refers to statements made by the witness on direct examination. *See id.* at 116-57. Third, in his summation, DeMarco referred to statements made by the government in its closing argument. *See id.* at 292, 298. Moreover, Howard was acquitted on three counts,

10

confirming that DeMarco's cross-examination of witnesses and summation were not entirely ineffective.

Thus, Howard has offered only conclusory, self-serving statements that DeMarco was asleep during "substantial portions" of his trial; such statements are belied by the record. Further, at no time during the trial did DeMarco's alleged unconsciousness cause the Court to stop the proceedings to give him a warning. Howard has failed to offer sufficient objective evidence to show that DeMarco's conduct was anywhere near as prejudicial as the attorney's in *Tippins*; therefore, Howard has failed to satisfy *Strickland*'s prejudice requirement.

## C. Ineffective Assistance: Sentencing

Howard argues that DeMarco was constitutionally ineffective for failing to oppose enhancements to the applicable Guidelines range based upon drug weight, and for failing to argue that mitigating factors entitled him to a lower sentence. Because the Court sentenced Howard to the statutory mandatory minimum of 240 months, Howard cannot satisfy *Strickland*'s prejudice requirement. *See* 18 U.S.C. § 841(b)(1)(A) ("If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years.").

### III

Howard argues that his sentence was based on the "unconstitutional guideline application for crack cocaine offenders which is constitutionally vague and meaningless." Pet'r Mem. of Law at 27. First, as noted above, Howard's sentence was not

11

based on the Guidelines; he was sentenced pursuant to the statutory mandatory minimum. Thus, it is irrelevant that after *United States v. Booker*, 543 U.S. 220 (2005), the Guidelines crack/power cocaine disparity is—like all other Guidelines—merely advisory. *See, e.g., Kimbrough v. United States*, 552 U.S. 85, 100-08 (2007). Second, to the extent that Howard challenges the validity of the 1:100 crack to powder cocaine ratio in 21 U.S.C. § 841(b)(1)(A), the Second Circuit upheld the statutory mandatory minimum in *United States v. Jackson*, 59 F.3d 1421, 1424 (2d Cir. 1995).[4]

## IV

Howard's petition is denied in its entirety. Because Howard has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c).

**SO ORDERED.**

s/ Judge Frederic Block

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
May 2, 2011

---

[4] Congress recently passed the Fair Sentencing Act, Pub. L. No. 111-220, 124 Stat. 2372, (2010) which decreased the statutory crack/powder cocaine disparity to 1:18. This statute does not apply retroactively. *United States v. Acoff*, 634 F.3d 200, 202 (2d Cir. 2011).